■ In the Matter of JOHN S. ANTROBUS et al., Respondents, v. BOARD OF ZONING APPEALS OF THE VILLAGE OF TUXEDO PARK, Respondent, and ROBERT S. DUVALL et al., Appellants.— In a proceeding pursuant to CPLR article 78 the appeal is from so much of a judgment of the Supreme Court, Orange County, dated April 10, 1973, as (1) annulled a determination of the respondent Board of Zoning Appeals of the Village of Tuxedo Park, dated July 16, 1971 (date erroneously referred to in the judgment as July 21, 1971), as amended by a supplementary determination dated September 17, 1971, which granted appellants a special exception to construct a tennis court and fence on their property in the Village of Tuxedo Park, and (2) ordered appellants to remove the court and fence. Judgment reversed insofar as appealed from, on the law, without costs, and petition granted to the extent that the matter is remanded to the respondent Board of Zoning Appeals for a new hearing and the making of proper findings of fact and conclusions in accordance with the views herein set forth. The real issue in this case is whether there was substantial evidence to support the respondent board's granting of a special exception. What the board did was to grant a special permit to appellants to build a 10-foot-high fence around a tennis court. Section 716 of the Village Building Zone Ordinance provides in pertinent part: " No fence shall be erected hereafter without a building permit and the approval of the Board of Architectural Review * * * *No fence shall exceed four (4) feet in height unless a special exception shall be granted by the Board of Appeals pursuant to Section 803 C of this Ordinance.* Such special exception shall be granted only with respect to the rear and side lot line " (emphasis added). The permit was issued by the village's Building Department in April, 1970. Thereafter, the situation deteriorated rapidly. Appellants made no attempt to obtain approval of the Architectural Review Board, as specifically required. They did not obtain a survey, with the result that the fence came within 1.5 feet of petitioners' property line, instead of the six feet specified in the permit. (The legal side-yard requirement here was 50 feet.) When, in the course of construction, petitioners observed tree roots being cut on their property, they ordered a survey prepared. The survey showed the entire 120-foot length of the court ran between 1.67 and 2.07 feet from their property line and a fieldstone retaining wall which was $2\frac{1}{3}$ feet high at some points actually encroached on their property. As indicated above, the authority for the granting of a special exception lies in subdivision C of section 803 of the ordinance. That subdivision provides in essence: " C. Special Exceptions: When, in its judgment, the public convenience and welfare will be substantially served and the appropriate use of neighboring property will not be injured thereby, the Board of Appeals may, in a specific case to the extent hereinafter set forth, after due notice and public hearing and subject to appropriate conditions and safeguards, determine and vary the application of this ordinance in harmony with its general purpose and intent as follows:

* * * 6. Vary yard restrictions where conformance would cause unnecessary hardship to the owner without any compensating benefit to the community. * * * 9. Permit the encroachment of buildings and structures into the front, rear and side yards, as follows: * * * (b) Fences, swimming pools, outdoor fireplaces, trellises, pergolas, tennis courts, flag poles, walls, gates and gate posts." The record in this case is barren of any proof whatever that appellants would suffer "unnecessary hardship" from a rejection of their request for this special exception. Yet this is what the ordinance requires. Perhaps such proof exists. Our holding is simply that the proof is not in this record, so we are giving the parties an opportunity to supply it (see *Matter of Carnat Realty* v. *Barnett*, 33 A D 2d 772). We further note that the ordinance (§ 803, subd. E) also requires that no permit be issued unless the Board of Appeals makes certain findings, e.g., that the proposed use of the property will not be detrimental to the neighborhood or to the residents thereof and will not alter the essential character of the neighborhood. Proof as to this, too, is not spelled out in the record before us. There is also the question of whether petitioners have standing to bring this proceeding. We conclude the answer is yes. They are contiguous property owners. The roots of trees on their property have been cut and the retaining wall actually encroaches on their property. Clearly, they are especially "affected" or "aggrieved" by the determination under review (see *Daum* v. *Meade*, 35 A D 2d 598; *Bloom* v. *Town Bd. of Town of Oyster Bay*, 41 A D 2d 533 [dissenting opn.], revd. on the dissenting opinion at the Appellate Division 32 N Y 2d 930). Rabin, P. J., Hopkins, Munder, Martuscello and Latham, JJ., concur.